UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CASSANDRA A. VALENTINE, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**MULLOOLY, JEFFREY, ROONEY & FLYNN LLP et al.,**<br><br>**Defendants.** | Civ. No. 2:20-cv-14152 (WJM)<br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.

In this putative class action, plaintiff Cassandra A. Valentine ("Plaintiff") claims that a collection letter sent by defendants Mullooly, Jeffrey, Rooney & Flynn LLP and its general partner, John Sheerin, (together, "Defendants") violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. More specifically, Plaintiff alleges that Defendants are attempting to collect consumer debts on behalf of debt buyers who had not obtained the proper licenses from the New Jersey Department of Banking and Insurance as required under the New Jersey Consumer Finance Licensing Act, N.J. Stat. Ann. § 17:11C-3. This matter is now before the Court on Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 44. For the reasons set forth below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.   BACKGROUND

The following facts are recounted from the Complaint and accepted as true for the purpose of resolving this motion. Plaintiff allegedly incurred a financial obligation to Capital One Bank ("Capital One") and then defaulted. Compl. ¶¶ 14, 17; Ex. A, Compl. After the account was in default, Distressed Asset Portfolio III, LLC ("DAP III") purchased the account and either directly or through intermediate transactions placed the account with Defendants for collection. Compl. ¶¶ 21-23. Defendants then mailed to Plaintiff a collection letter dated October 8, 2019 (the "Letter"), a copy of which is attached to the

Complaint as Exhibit A.[1]  *Id.* ¶ 26.  The Letter includes a block of text identifying the entities related to Plaintiff's account:

> Assignee for Collection Purposes: UNIFUND CCR, LLC
> Current Creditor to whom the debt is Owed: DISTRESSED ASSET PORTFOLIO III, LLC
> Original Creditor: CAPITAL ONE BANK (USA), N.A.

Ex. A, Compl.  The Letter then states: "The above Current Creditor through their assignee has turned over to us for collection the above account in the sum of $2,787.94."  *Id.*

After receiving the Letter, Plaintiff filed the present action.  Plaintiff alleges that DAP III, the current creditor to whom the debt is owed, impermissibly bought and assigned the debt without first obtaining a license as a "consumer lender" or "sales finance company" from the New Jersey Department of Banking and Insurance ("NJDOBI"), as required under the New Jersey Consumer Finance Licensing Act ("NJCFLA"), N.J. Stat. Ann. § 17:11C-3.  Compl. ¶¶ 29-35.  Plaintiff alleges that Defendants' Letter attempting to collect the debt on behalf of DAP III consequently violates Sections 1692e, 1692f, and 1692g of the FDCPA by misrepresenting that DAP III had the right to purchase and then collect payment on the debt when in fact it did not.  *Id.* ¶¶ 2, 59.  In seeking dismissal of the Complaint under Rule 12(b)(6), Defendants argue that DAP III is exempt from the NJCFLA's licensing requirements, and even if it were not exempt, several courts outside the District of New Jersey have determined that unlicensed debt collection is not a *per se* violation of the FDCPA.  *See generally* Defs. Mov. Br., ECF No. 45.

## II.   LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).  The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  This facial-plausibility standard

---

[1] While the Court is ordinarily confined to the allegations of the complaint when deciding a Rule 12(b)(6) motion, it "may consider 'document[s] *integral to or explicitly relied* upon in the complaint.'" *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original).

is met where the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.  DISCUSSION

#### A. The FDCPA

The FDCPA protects against abusive debt collection practices "by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (citing 15 U.S.C. §§ 1692b-1692j). In collecting or attempting to collect any debt, debt collectors are prohibited from using "any false, deceptive, or misleading representation or means," falsely representing "the character, amount or legal status of any debt," and "threat[ening] to take any action that cannot legally be taken," among other conduct. 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692e(10); *see also* 15 U.S.C. § 1692f (prohibiting the use of "unfair or unconscionable means" to collect a debt). Courts determine whether a communication from a debt collector violates the FDCPA by analyzing the debt collector's communications from the perspective of the "least sophisticated debtor" in order to protect "all consumers, the gullible as well as the shrewd," while simultaneously "preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453-54 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 356 (3d Cir. 2000), *as amended* (Sept. 7, 2000)) (quotation marks omitted).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The only element at issue in this case is the fourth—whether Defendants violated the FDCPA when they attempted to collect a debt on behalf of DAP III, an unlicensed debt collector.

#### B. The *Valentine I* Action

The Honorable John M. Vazquez, U.S.D.J., addressed this very issue as it pertains to DAP III in this case's earlier-filed companion case involving the same underlying Capital One debt.[2] *Valentine v. Unifund CCR, Inc.*, No. 20-5024, 2021 WL 912854 (D.N.J. Mar. 10, 2021) ("*Valentine I*"). In *Valentine I*, Plaintiff sued Unifund CCR, LLC ("Unifund") and DAP III based on a collection letter sent by Unifund attempting to collect the debt on behalf of DAP III. *Id.* at *1. The present case adds one more link in the chain: Defendants are now attempting to collect the debt on behalf of DAP III, which remains the

---

[2] These cases are consolidated for pretrial discovery purposes only. *See* Order, ECF No. 22.

3

current creditor to whom the debt is owed, with Unifund as DAP III's assignee for collection purposes. *See* Ex. A., Compl. Both cases are premised on Plaintiff's allegation that the respective collection letters violate Sections 1692e, 1692f and 1692g of the FDCPA because DAP III is not licensed pursuant to the NJCFLA. *See* Compl. ¶¶ 2, 59; *Valentine I*, 2021 WL 912854, at *1.

In *Valentine I*, Unifund and DAP III moved to dismiss the complaint on the grounds that the NJCFLA, read in conjunction with certain regulatory changes issued by the Federal Deposit Insurance Corporation ("FDIC") and the Office of the Comptroller of the Currency ("OCC"), provides a licensing exception for federal depository institutions like Capital One that subsequently applies to DAP III as the successor-in-interest for Plaintiff's account.[3] *Valentine I*, 2021 WL 912854, at *4. More specifically, Unifund and DAP III argued that the FDIC and OCC's recently adopted "valid when made" rules "ensure that subsequent purchasers of paper from a national bank are afforded the same rights and privileges as the national bank when it comes to enforcing the collectability of the paper." *Id.* Unifund and DAP III further argued that the line of cases from this District recognizing that a debt collector's lack of license may constitute an FDCPA violation is no longer good law because of the regulatory changes, and that courts outside this District have determined that unlicensed debt collection is not a *per se* FDCPA violation. *Id.* at *5. Judge Vazquez rejected each of these arguments, finding that the NJCFLA licensing requirements applied to DAP III and that DAP III qualified as a "consumer lender" required to obtain a license from the NJDOBI to buy or collect debt. *Id.* Now, on the instant motion to dismiss, and without addressing the decision in *Valentine I*, Defendants advance arguments identical to those made by Unifund and DAP III concerning the NJCFLA's applicability to DAP III. Finding no basis to depart from Judge Vazquez's reasoning in *Valentine I*, which the Court incorporates into its own analysis below, Defendants' motion will be denied on these same grounds.

### C. DAP III's Lack of License

"Courts in this district have determined that a debt collector's failure to obtain a license pursuant to the NJCFLA may constitute a violation of the FDCPA." *Valentine I*, 2021 WL 912854, at *4; *see, e.g.*, *Tompkins v. Selip & Stylianou, LLP*, No. 18-12524, 2019 WL 522143, at *2 (D.N.J. Feb. 11, 2019) (collecting cases within the District holding that "a debt collector's failure to obtain a license pursuant to the [NJCFLA] can constitute a violation of the FDCPA"). The NJCFLA provides that "[n]o person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J. Stat. Ann. § 17:11C-3. The statute provides an exception,

---

[3] "The [OCC] is an independent bureau of the U.S. Department of the Treasury" that "charters, regulates, and supervises all national banks, federal savings associations, and federal branches and agencies of foreign banks." *Who We Are*, Office of the Comptroller of the Currency, https://www.occ.treas.gov/about/who-we-are/index-who-we-are.html (last accessed July 6, 2022).

4

however, stating that a depository institution, among other entities, "may conduct consumer loan business without obtaining a license under this act and without being subject to this act." N.J. Stat. Ann. § 17:11C-6. Here, Plaintiff's debt originated with Capital One. Ex. A, Compl. Defendants ask the Court to take judicial notice of the fact that Capital One is a federal depository institution, as recognized by the FDIC, and is therefore exempt from the NJCFLA's licensing requirements. Defs. Mov. Br. at 10, ECF No. 45. Defendants argue, as Unifund and DAP III argued in *Valentine I*, that recent regulatory changes by the OCC and FDIC ensure that DAP III, the subsequent purchaser of the debt from an exempt entity, is entitled to the same treatment as Capital One and is thus exempt from the licensing requirements. *Id.* at 9-11. The Court disagrees and declines to read the regulatory changes, which specifically address the interest that national banks may charge, with such breadth.

In 2020, the OCC and FDIC both adopted final rules codifying the "valid when made" rule, a longstanding common law principle that if an interest rate was legal when a bank made the loan, the rate remains valid after the bank sells, assigns, or transfers the loan. *See* Permissible Interest on Loans That are Sold, Assigned, or Otherwise Transferred, 85 Fed. Reg. 33530, 2020 WL 2836957 (June 2, 2020); Federal Interest Rate Authority, 85 Fed. Reg. 44146, 2020 WL 4192852 (July 22, 2020). The rule changes were prompted by the Second Circuit's decision in *Madden v. Midland Funding, LLC*, 786 F.3d 246, 250-51 (2d Cir. 2015), in which the court held that the National Bank Act's preemption of state-law usury claims did not extend to non-national bank assignees of national banks, thereby subjecting those assignees to state-law usury restrictions with respect to interest that accrued after assignment. The Second Circuit did not directly address the application of the "valid when made" rule to the facts of the case, but the OCC and FDIC determined that its holding highlighted the need to issue "regulations clarifying the law that governs the interest rates [banks] may charge." Federal Interest Rate Authority, 85 Fed. Reg. at 44146; Permissible Interest on Loans, 85 Fed. Reg. at 33531 ("[T]he OCC is undertaking this rulemaking to clarify that a bank may transfer a loan without impacting the permissibility or enforceability of the interest term in the loan contract, thereby resolving the legal uncertainty created by the *Madden* decision."). The OCC's final rule therefore amended the federal regulation corresponding to Section 85 of the National Bank Act, 12 U.S.C. § 85, by adding the following new paragraph: "**(e) *Transferred Loans.*** Interest on a loan that is permissible under [Section 85] shall not be affected by the sale, assignment, or other transfer of the loan." 12 C.F.R. § 7.4001(e); *see* Permissible Interest on Loans, 85 Fed. Reg. at 33534. Similarly, the FDIC rule amended the federal regulation corresponding to Section 27 of the Federal Deposit Insurance Act, 12 U.S.C. § 1831d, by clarifying: "Whether interest on a loan is permissible under section 27 . . . is determined as of the date the loan was made" and "shall not be affected by . . . the sale, assignment, or other transfer of the loan, in whole or in part." 12 C.F.R. § 331.4(e); *see* Federal Interest Rate Authority, 85 Fed. Reg. at 44155.

Considering the plain language of the amended regulations, along with the OCC and FDIC's aims in issuing the clarifying regulations in the aftermath of *Madden*, the Court

cannot find that the OCC and FDIC's rules encompass state licensing requirements. *See Valentine I*, 2021 WL 912854, at *4 ("It does not appear, however, that the OCC intended to alter other aspects of an assignment through the rule change."). Indeed, the OCC expressly rejected requests to change its proposed regulatory text to "clarify that the rule does not affect the applicability of other state law requirements, including licensing requirements," as unnecessary because "the OCC reads the regulatory text to be consistent with these recommendations." Permissible Interest on Loans, 85 Fed. Reg. at 33535. The FDIC likewise confirmed that its "proposed rule would not exempt State banks or nonbanks from State laws and regulations," nor would it "address or affect the broader licensing or regulatory requirements that apply to banks and non-banks under applicable State law." Federal Interest Rate Authority, 85 Fed. Reg. at 44153. "[The rule] would only clarify the application of section 27 with respect to the interest rates permitted for State banks' loans." *Id.* To that end, and as Defendants have not identified any cases that apply the OCC and FDIC's newly adopted rules or the "valid when made" rule to licensing requirements, the Court finds that the rules did not affect DAP III's licensing requirements under the NJCFLA. *See Valentine I*, 2021 WL 912854, at *5 (finding same).

Defendants also argue that cases from this District recognizing that a debt collector's failure to obtain a license pursuant to the NJCFLA may constitute an FDCPA violation are no longer good law in light of the regulatory changes. Defs. Mov. Br. at 14-16, ECF No. 45. Defendants point to cases from outside this District in which courts have determined that unlicensed debt collection is not a *per se* violation of the FDCPA. *Id.* at 18-20. Because the Court finds that the regulatory changes did not impact licensing requirements, the regulatory changes likewise did not impact the line of cases with which Defendants takes issue. *See Valentine I*, 2021 WL 912854, at *5. The Court therefore finds the decisions from this District to be persuasive. *See, e.g.*, *Tompkins*, 2019 WL 522143, at *2 (collecting cases).

Finally, Defendants filed a Notice of Supplemental Authority after their motion was fully briefed, and without first seeking leave, advising the Court of a recent, unpublished New Jersey Superior Court, Law Division decision, *Woo-Padva v. Midland Funding LLC*, 2022 WL 267938, (N.J. Super. Ct. Law Div. Jan. 21, 2022). ECF No. 46. There, the Superior Court determined that a debt buyer was not required to obtain a license under the NJCFLA because it did not meet the statutory definition of "consumer lender." *Woo-Padva*, 2022 WL 267938, at *2. Defendants acknowledge that they did not contest DAP III's status as a "consumer lender" in their motion to dismiss, but they maintain that the *Woo-Padva* decision provides an alternative basis for the requested relief—dismissal of the Complaint because DAP III does not need to be licensed under the NJCFLA. ECF No. 46 at 4, n.1. The Court disagrees. The Superior Court's decision is neither binding nor necessarily persuasive in this Court's determination that DAP III is a "consumer lender." *See, e.g., D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2009 WL 904054, at *2 (D.N.J. Mar. 31, 2009) (citing *Nat'l Sur. Corp. v. Midland Bank*, 551 F.2d

6

21, 28 (3d Cir. 1977)) ("[I]n determining the applicability of the state law . . . in this case, [the Court] is not bound by a state trial court decision[.]").

As discussed above, the NJCFLA requires a person or entity that qualifies as a "consumer lender" or "sales finance company" to first obtain a license from the NJDOBI. N.J. Stat. Ann. § 17:11C-3(a). A "consumer lender" is a person or entity that, among other things, "directly or indirectly engag[es] . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less[.]" N.J. Stat. Ann. § 17:11C-2. In analyzing whether this definition covered debt buyers, the Superior Court in *Woo-Padva* stated that "notes" were distinct from "debts," but did not define either term. 2022 WL 267938, at *2. The Superior Court relied on three unpublished cases from Ohio and Michigan to support its assertion, and pointed to the fact that a New Jersey statute, N.J. Stat. Ann. § 12A:3-118, "explicitly provides the statute of limitations for 'an action to enforce the obligation of a party to pay a note'" while another statute, N.J. Stat. Ann. § 2A:14-1 "provides the statute of limitations to enforce claims based on a breach of contract that generally apply to credit card debts." 2022 WL 267938, at *2.

Respectfully, the Court is not persuaded by this line of reasoning. Courts in this District have invoked that part of the NJCFLA—the part reading: "directly or indirectly engag[es] . . . in the business of buying, discounting or endorsing notes"—when classifying debt collection practices as falling within the "consumer loan business." *Tompkins*, 2019 WL 522143, at *3 (citing *Nepomuceno v. Midland Credit Mgmt., Inc.*, No. 14-5719, 2017 WL 2267261, at *9 (D.N.J. May 24, 2017), and *Lopez v. Law Offices of Faloni & Assocs., LLC*, 16-01117, 2016 WL 4820629, at *5 (D.N.J. Sept. 14, 2016)); *see also Valentine I*, 2021 WL 912854, at *5. This Court will do the same and find that as a purchaser of debt, DAP III meets the definition of "consumer lender" required to obtain a license under the NJCFLA. *Valentine I*, 2021 WL 912854, at *5 (finding same regarding DAP III). Accordingly, for the reasons explained above, Defendants' motion to dismiss the Complaint on the grounds that DAP III is exempt from the NJCFLA's licensing requirements is denied.

### D. Violations of Section 1692g

In the Complaint, Plaintiff alleges that Defendants violated Section 1692g of the FDCPA, which requires debt collectors to provide the consumer with written notice of certain rights and information related to the debt, such as the amount of the debt and the name of the creditor to whom the debt is owed. Compl. ¶ 59; *see* 15 U.S.C. § 1692g(a). Defendants maintain that because Plaintiff fails to allege conduct that demonstrates any violation of Section 1692g, these claims must be dismissed. Defs. Mov. Br. at 20, ECF No. 46. Plaintiff does not address this argument in her opposition brief. The Court agrees with Defendants that Plaintiff's Complaint fails to include sufficient allegations

demonstrating that they violated Section 1692g. This aspect of Defendants' motion is granted and the Section 1692g claims are dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, ECF No. 44, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies articulated herein. If Plaintiff does not file an amended pleading within that time, the claims dismissed will be dismissed with prejudice.

An appropriate Order accompanies this Opinion.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 6, 2022**