UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CASSANDRA A. VALENTINE, individually
and on behalf of all others similarly situated,

Plaintiffs,

v.

MULLOOLY, JEFFREY, ROONEY &
FLYNN LLP et al.,

Defendants.

Civ. No. 2:20-cv-14152 (WJM)

OPINION

**WILLIAM J. MARTINI, U.S.D.J.**

In this putative class action, plaintiff Cassandra A. Valentine ("Plaintiff") claims that a collection letter sent by defendants Mullooly, Jeffrey, Rooney & Flynn LLP and its general partner, John Sheerin, (together, "Defendants") violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. This matter is now before the Court on Defendants' motion to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction due to Plaintiff's lack of Article III standing. Defs.' Mot. ("Motion"), ECF No. 57. For the reasons set forth below, Defendants' Motion is **GRANTED**.

I.   BACKGROUND

Plaintiff allegedly incurred, and then defaulted on, a debt ("Debt") "primarily for the Plaintiff's personal, family, or household purposes." First Am. Compl. ("FAC") ¶¶ 14, 17, ECF No. 56. After the account was in default, Distressed Asset Portfolio III, LLC ("DAP III") purchased the account and ultimately placed the account with Defendants for collection. FAC ¶¶ 21-23. Acting on behalf of DAP III in an attempt to collect the Debt, Defendants then mailed to Plaintiff a collection letter dated October 8, 2019 (the "MJR&F Letter"), a copy of which is attached to Plaintiff's original complaint in this action as Exhibit A. FAC ¶¶ 24, 26; Ex. A, Compl., ECF No. 1. The MJR&F Letter includes a block of text identifying the entities related to Plaintiff's account:

> Assignee for Collection Purposes: UNIFUND CCR, LLC
> Current Creditor to whom the debt is Owed: DISTRESSED ASSET PORTFOLIO III, LLC

Original Creditor: CAPITAL ONE BANK (USA), N.A.

Ex. A, Compl. The MJR&F Letter then states: "The above Current Creditor through their assignee has turned over to us for collection the above account in the sum of $2,787.94." *Id.*

## II. PROCEDURAL HISTORY

Plaintiff filed the present action on October 8, 2020. ECF No. 1. On May 20, 2022, Defendants moved to dismiss the complaint for failure to state a claim. ECF No. 44. On July 6, 2022, the Court granted the motion in part and denied the motion in part. ECF Nos. 52-53.

On August 5, 2022, Plaintiff filed its First Amended Complaint. ECF No. 56. Plaintiff alleges that DAP III, the current creditor to whom the Debt is owed, impermissibly bought and assigned the Debt without first obtaining a license as a "consumer lender" or "sales finance company" from the New Jersey Department of Banking and Insurance ("NJDOBI"), as required under the New Jersey Consumer Finance Licensing Act ("NJCFLA"), N.J. Stat. Ann. § 17:11C-3. FAC ¶¶ 29-36. Plaintiff argues that under the NJCFLA, Defendants' unlicensed attempts to collect the Debt rendered the Debt void and that no amount was owed to DAP III. FAC ¶¶ 39-40. Because of this, Plaintiff asserts that the MJR&F Letter misstates the "amount of debt" owed and the "creditor to whom the debt is owed[.]" FAC ¶¶ 41-42. Due to these misstatements, Plaintiff alleges that the MJR&F Letter deprived Plaintiff—and other New Jersey consumers to whom Defendants sent a similar letter—of truthful, non-misleading, information in connection with Defendants' attempt to collect a debt. FAC ¶¶ 38, 44. As such, Plaintiff asserts that by sending the MJR&F Letter, "Defendants engaged in unlawful practices in violation of the FDCPA including but not limited to 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692g, 1692g(a)(1), and 1692g(a)(2)." FAC ¶ 45.

Defendants now move to dismiss the FAC, arguing that this Court lacks subject matter jurisdiction because Plaintiff has not alleged that she suffered concrete harm sufficient to establish Article III standing under the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). *See generally* Defs.' Mot. ("Motion"), ECF No. 57.

### A. The *Valentine I* Action

The Honorable John M. Vazquez, U.S.D.J., addressed this very issue on a motion to dismiss in an earlier-filed companion case involving the same underlying Debt.[1] *See Valentine v. Unifund CCR, LLC* (*Valentine I*), No. CV 20-5024, 2023 WL 22423 (D.N.J.

---

[1] These cases are consolidated for pretrial discovery purposes only. *See* Order, ECF No. 22.

Jan. 3, 2023). In *Valentine I*, Plaintiff sued DAP III and Unifund CCR, LLC ("Unifund") over a collection letter sent to Plaintiff by Unifund that also attempted to collect the Debt on behalf of DAP III. *Id.* at *1. The present case adds one more link in the chain: DAP III, through Unifund, has now turned the Debt over to Defendants for collection from Plaintiff. *See* Ex. A., Compl. The cases involve the same counsel and are both premised on Plaintiff's allegation that the respective collection letters violate the FDCPA because DAP III is not licensed pursuant to the NJCFLA. *See Valentine I*, 2021 WL 912854, at *1.

Similar to the instant motion, the defendants in *Valentine I* moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, arguing that Plaintiff failed to establish that she had Article III standing to sue in federal court. Finding that Plaintiff failed to sufficiently allege the first requirement of standing—that she suffered a concrete "injury in fact"—Judge Vazquez granted Unifund and DAP III's motion and dismissed the complaint. *See id.* at *5.

Now, on the instant motion to dismiss, and without addressing the decision in *Valentine I*, Defendants advance arguments identical to those made by Unifund and DAP III in *Valentine I* concerning Plaintiff's lack of Article III standing. Finding no basis to substantially depart from Judge Vazquez's reasoning in *Valentine I*, which the Court incorporates into its own analysis below, Defendants' Motion will be denied on similar grounds.[2]

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for challenging Article III standing, which is a component of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). The parties and Court agree that Defendants' Motion constitutes a "facial attack" against Plaintiff's FAC, meaning that the motion "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and . . . requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citations omitted).

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. One element of this case-or-controversy requirement is that Plaintiff, as the party invoking federal court jurisdiction, must establish that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To satisfy Article III's standing

---

[2] Previously, the defendants in *Valentine I* filed a Motion to Dismiss on the merits in front of Judge Vazquez, which was nearly identical to the Motion to Dismiss filed on May 20, 2022 by Defendants in the instant case. *See* Mot. to Dismiss, ECF No. 44. This Court incorporated Judge Vazquez's reasoning in granting and denying the motion in part. *See* Opinion, ECF No. 52.

requirements, Plaintiff must "clearly . . . allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to Defendants' challenged conduct, and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Concrete injuries can be tangible or intangible. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). The Court presumes that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (citations and quotation marks omitted).

## IV. DISCUSSION

At issue here, as it was in *Valentine I*, is whether Plaintiff sufficiently alleged that she suffered an "injury in fact" that is "concrete and particularized." As discussed *supra*, the FAC alleges that "Defendants attempted to collect on accounts that were made void by DAP III's failure" to obtain the required licenses under the NJCFLA, FAC ¶ 66, and "misrepresented the amount of the debt that they could collect upon in their communication to Plaintiff" via the MJR&F Letter, in violation of the FDCPA, FAC ¶ 67. Plaintiff asserts that she "received and reviewed the MJR&F Letter," FAC ¶ 28, and that "Defendants' allegation [of the Debt] and direct communication with Plaintiff to collect the [D]ebt [via the MJR&F Letter] was a concrete harm sufficient for standing[,]" Pl.'s Opp. ("Opp.") at 2, ECF No. 58.

The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts— such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *Id.* at 2200 (quoting *Spokeo*, 578 U.S. at 340-41).

In *TransUnion*, the Court held that class members who were labeled as potential terrorists in credit reports disseminated to third parties "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation[,]" and as such, "suffered a concrete harm that qualifies as an injury in fact." *Id.* at 2209. Applying this holding to

4

the instant case, Plaintiff asserts that "[j]ust as the plaintiffs in [*TransUnion*] had standing because the defendant communicated the misleading statement, Plaintiff has standing because Defendants communicated materially false, deceptive, and misleading statements." Opp. at 11-12. Importantly, however, the communications in *TransUnion* that gave rise to a concrete harm were disseminated to third parties, and it is this dissemination that gave the communication "a sufficiently close relationship to the harm from a false and defamatory statement." *TransUnion*, 141 S. Ct. at 2209. By contrast, the *TransUnion* Court held that other class members whose credit reports were not disseminated to a third party "did not suffer a concrete harm," even though their reports also contained misleading labels. *Id.* at 2209, 2212. Plaintiff has not alleged that the MJR&F Letter was disseminated to any third parties.

Further, "merely receiving a 'misleading' collection letter, as alleged here, is insufficient to establish a concrete injury, absent some action or inaction taken in response or other form of injury." *Valentine I*, No. CV 20-5024, 2023 WL 22423, at *3 (collecting cases). Plaintiff alleges only that "the MJR&F Letter deprived Plaintiff and other New Jersey consumers of truthful, non-misleading, information in connection with Defendants' attempt to collect a debt." FAC ¶ 38. She has not alleged that she has experienced any "downstream consequences" or "adverse effects" as a result of the MJR&F Letter, *TransUnion*, 141 S. Ct. at 2214, or that she took any "action or inaction in reliance" on it, *Valentine I*, No. CV 20-5024, 2023 WL 22423, at *3. As such, Plaintiff has not asserted that she has suffered an injury-in-fact sufficient to satisfy the requirements of Article III.

In her opposition, Plaintiff points to *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021) as an example of where the Third Circuit allegedly concluded that a consumer had standing to raise his FDCPA claim "without showing any harm other than the violation of his statutory rights." Opp. at 12. However, *Morales* does not dispense with the requirement that a harm must be concrete. In fact, the court explicitly states that "not all transgressions create standing—procedural gaffes that cause no 'concrete' injury fall short of Article III's requirements." *Morales*, 859 F. App'x at 626. The circuit states only that "*[i]f a statutory harm is concrete*, no 'additional harm beyond the one Congress has identified' is required." *Id.* at 626-27 (emphasis added and omitted) (citing *Spokeo*, 578 U.S. at 342). Ultimately, the *Morales* Court held that the plaintiff had standing to bring an FDCPA claim after a debt collector placed a QR code on an envelope mailed to the debtor because "[t]he envelope's barcode disclosed [plaintiff's] protected information, which caused a concrete injury in fact under the FDCPA." *Id.* at 628. Plaintiff here does not allege any such disclosure, and thus *Morales* is inapposite.

Plaintiff also asserts that the Supreme Court's decision in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) concludes that "*every* violation of the law necessarily presumes an injury." Opp. at 15. However, the issue in *Uzuegbunam* is not analogous to the issue in the instant case. There, the Court considered whether a plaintiff who "establishes the first two elements of standing (injury and traceability) can establish the

third [redressability] by requesting only nominal damages." *Uzuegbunam*, 141 S. Ct. at 797. Because the *Uzuegbunam* Court's "holding concerns only redressability[,]" and not injury, it is not controlling here. *Id.* at 802.

Lastly, the Court is not swayed by the post-*TransUnion* cases cited favorably by Plaintiff, because as Plaintiff notes, the decisions rely on pre-*TransUnion* authority. Opp. at 13-14, 19.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, ECF No. 57, is **GRANTED**. Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies articulated herein. If Plaintiff does not file an amended pleading within that time, the claims will be dismissed with prejudice.

An appropriate Order accompanies this Opinion.

WILLIAM J. MARTINI, U.S.D.J.

Date: March 17, 2023